IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:17-CR-00293-BSM |
| | ) | |
| BRITANNY CONNER | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

The United States of America, by and through its counsel, Cody Hiland, United States

Attorney for the Eastern District of Arkansas, and Liza Brown, Assistant United States Attorney

for said district, respectfully requests that this Court deny the defendant's motion for

compassionate release from the Bureau of Prisons (BOP) because compassionate release is not

warranted in this case.

The defendant was sentenced by this Court to a total of 120 months' imprisonment in the

BOP on October 7, 2019, for conspiracy to possess with intent to distribute and to distribute

methamphetamine. The defendant was a source of supply of methamphetamine for a drug-

trafficking organization. She arranged to supply individuals with methamphetamine shipped from

California to Arkansas. She was determined to be responsible for more than 500 grams, but less

than 1.5 kilograms, of a mixture and substance containing a detectable amount of

methamphetamine.

The defendant filed the instant motion on October 7, 2020. In the motion, the defendant

contends that she should be granted compassionate release in light of the COVID-19 pandemic

due to underlying health conditions, specifically issues with her hips and feet that have led to

multiple surgeries. The defendant submitted a request for compassionate release dated August 19,

2020. The request was denied by the warden of her facility on September 3, 2020. This Court should deny the motion because compassionate release is not warranted in this case.

## I.   COMPASSIONATE RELEASE IS NOT WARRANTED

The defendant bears the burden of showing that compassionate release is appropriate. *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at \*1 (W.D. Ark. Mar. 24, 2020). This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either (1) "extraordinary and compelling reasons warrant such a reduction," or (2) the defendant is at least 70 years old and has served at least 30 years in prison, <u>and</u> "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[1]

The pertinent policy statement is set forth at United States Sentencing Guidelines (U.S.S.G.) § 1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

The Sentencing Commission also provided explicit examples of what constitutes an "extraordinary and compelling circumstance":

(A)   **Medical Condition of the Defendant.**—

    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not

---

[1] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)      suffering from a serious physical or medical condition,

        (II)     suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    **Age of the Defendant.** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C)    **Family Circumstances.** —

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

(D)    **Other Reasons.** — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

## A.    The defendant's condition and the current pandemic do not justify compassionate release of the defendant.

Here, the defendant is not claiming that she is suffering from a terminal illness or serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(i), (ii). Even when a prisoner is suffering from an

illness, a reduction in sentence due to a medical condition is a rare event. *See United States v. Mitchell*, No. 5:10-CR-50067-001, 2020 WL 544703, at *3 (W.D. Ark. Feb. 3, 2020).

Concerns about potential exposure to COVID-19 are not sufficient to justify compassionate release. *See United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."); *see also United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (quoting *Eberhart*); *United States v. Zywotko*, No. 219CR113FTM60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (same). The defendant is thirty-five years old. Her medical records indicate that she is slightly obese, and the CDC has identified obesity as a risk factor for COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The defendant also reported as part of her medical screening that she used cigarettes for several years, and the CDC has recently identified a history of smoking as being a risk factor. *See id.* While the medical records do indicate that the defendant has a club foot and has had a hip replacement, neither of those conditions are indicated as possible risk factors associated with COVID-19. *See id.* Although the defendant alleges to have had many prior surgeries due to these conditions, there is no indication from the medical records that these surgeries have negatively impacted her health. The United States can provide the Court with the defendant's medical records if deemed necessary for a determination in this matter.

The United States maintains that the existence of COVID-19 does not constitute an extraordinary and compelling reason warranting compassionate release. However, recently, the Department of Justice has refined its position on compassionate release as follows: "under present

circumstances, an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, presents an 'extraordinary and compelling reason[]' that may warrant compassionate release if other criteria are also met." 18 U.S.C. 3582(c)(1)(A).  Therefore, if the Court determines that the defendant has a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate is not expected to recover, this Court could reasonably find the existence of an extraordinary and compelling reason if the other criteria are also met.  However, in this case, the remaining criteria are not satisfied because the defendant's criminal and substance-abuse histories indicate that she would pose a danger to the community if she were released.

**B.**     **BOP's COVID-19 Action Plan**

Further, in an effort to mitigate the spread of the virus in its detention facilities, BOP has instituted a five-phased COVID-19 Action Plan to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating persons sentenced or detained based on judicial orders.  *See* Federal Bureau of Prisons COVID-19 Action Plan, available at www.bop.gov/resources/news/20200313_covid-19.jsp; *see also Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789 (8th Cir. 2016) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011), for the proposition that courts have the authority to take judicial notice of government websites). The defendant has not demonstrated that the plan adopted by the BOP is inadequate to either manage the outbreak or provide treatment for inmates who fall ill. *See United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. March 19, 2020); *see also Clark*, *supra*.

- Phase 1:  In January 2020, the BOP established a task force to begin planning for potential coronavirus transmissions, and to build on its existing procedures for pandemics.

- Phase 2:  On March 13, 2020, the BOP implemented aggressive measures to prevent and mitigate the risk of COVID-19 transmission into and inside its facilities, including:

  - Screening of Inmates and Staff:  All new BOP inmates are screened for COVID-19 symptoms and risk of exposure.  Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols.  In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (staff registering a temperature of 100.4 degrees F or higher will be barred from the facility).

  - Quarantine Logistics:  All BOP institutions establish quarantine areas within their facilities to house any inmates found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

  - Suspension of Social Visits and Tours: BOP placed a 30-day hold on all social visits and tours.

  - Suspension of Legal Visits: BOP placed a 30-day hold on legal visits, with exceptions permitted on a case-by-case basis.

  - Suspension of Inmate Movements: BOP ceased the movement of inmates amongst its facilities for at least 30 days, with exceptions for medical treatment and other exigencies.

  - Modified Operations:  BOP facilities modified operations in order to maximize social distancing.

- Phase III:  On March 18, 2020, the BOP implemented an action plan for locations that perform administrative services to allow for maximizing telework. All cleaning, sanitation, and medical supplies were inventoried. Ample supplies were determined to be on hand and ready to be distributed or moved to any facility as deemed necessary. The BOP placed additional orders for supplies, in case of a protracted event.

https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (pertaining to phases I-III).

- Phase IV:  On March 26, 2020, the BOP implemented revised preventative measures for all institutions. The agency updated its quarantine and isolation procedures to require all newly admitted inmates to BOP, whether in a sustained community transition area or not, be assessed using a screening tool and temperature check. This includes all new intakes, detainees, commitments, writ returns from judicial proceedings, and parole violators, regardless of their method of arrival. Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

- Phase V:  On April 1, 2020, in response to a growing number of quarantine and isolation cases, the BOP directed the following actions be taken immediately to further mitigate the exposure and spread of COVID-19:

  - o  For a 14-day period, inmates in every institution be secured in their cells/quarters to decrease the spread of the virus.

o During this time, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

o The BOP is to coordinate with the United States Marshals Service to significantly decrease incoming movement during this time.

o After 14 days, this decision will be reevaluated.

o Limited group gathering will be afforded to the extent practical to facilitate, commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System (TRULINCS) access.

*See* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (phases IV-V). Further details regarding the BOP's COVID-19 action plan and efforts are available at https://www.bop.gov/resources/news/20200313_covid-19.jsp and https://www.bop.gov/coronavirus/index.jsp.

As of October 15, 2020, the BOP's website indicates that FCI Dublin, the facility where the defendant is incarcerated, has one inmate and no BOP staff members who are positive for COVID-19. *See* https://www.bop.gov/coronavirus/. No persons will be admitted to BOP facilities without being screened for symptoms and risk of infection, and the BOP is taking precautions as set forth above. There is ample evidence of widespread COVID-19 transmission and clustering outside of BOP.

**C.      BOP has the authority to release inmates on home confinement, if necessary.**

BOP has been granted wider authority to designate inmates for home confinement in its toolkit of available measures. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate,

to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." The defendant does not appear to be eligible for release on home confinement, as she is classified as a low risk for recidivism. In addition, she has served less than one-third of her sentence.

  **D. The defendant remains a danger to the community.**

  This Court may not reduce the defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. The record in this case precludes such a finding.

  Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g)(1)–(4).

Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that the defendant is not a danger to the safety of any other person or the community.

In October 2004, the defendant was convicted of possession of methamphetamine. (Brittany Conner PSR). She was initially sentenced to probation; however, after her probation was revoked on two separate occasions, she was sentenced to a term of imprisonment. *Id.* The defendant later absconded after she was released on parole. *Id.* The defendant was also convicted of multiple violations of the Arkansas Hot Check law in October 2004. *Id.* In August 2017, the defendant was convicted of possession of methamphetamine. *Id.* The incident appears to have involved a firearm, as a count of possession of a firearm by certain persons was dismissed. *Id.* The probation that the defendant received as part of her sentence was revoked in February 2018. *Id.* The defendant has an extensive history of substance abuse. She reported long-term, ongoing use of alcohol, marijuana, cocaine, crack cocaine, methamphetamine, heroin, hallucinogens, ecstasy, "lean," synthetic marijuana, opiates, and barbituates. *Id.* The defendant reported that she entered residential drug treatment in 2004 or 2005, but she left after two weeks. *Id.*

Not only does the defendant present a danger to the community, but the community itself is more vulnerable to such danger given the COVID-19 pandemic. The defendant has a history of violating conditions, as reflected in her multiple probation revocations and her absconder status while on parole. If the defendant is released, she is likely to violate conditions imposed by the Court. A defendant who is unable to comply with conditions of release poses risks to law enforcement if required to attempt to locate and arrest the defendant, as well as the United States Probation Office tasked with supervising him. Because first responders are focused on mitigating the effects of the COVID-19 outbreak, they are less equipped to prevent and respond to wrongdoing.  Indeed, as a district court in Maryland recently observed, installation of location-

monitoring tools now poses a risk to United States Pretrial Services officers "given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857 (D. Md. Mar. 17, 2020). Irresponsible social habits endanger the community, and the current guidance largely relies on voluntary compliance. A person who ignores rules and admonitions could increase infection rates. The Court should consider the defendant's demonstrated history of violating the law, including actions that showed no regard for the welfare of others. The motion fails to sufficiently address the untenable strain on the resources of law enforcement, the pretrial services office and the Court. Potential exposure to the virus is a reality confronting everyone in the United States and around the world.  Releasing the defendant will neither eliminate the possibility of exposure nor satisfy the requirements of the statute.

If this Court determines that release from BOP is appropriate in this case, the United States respectfully requests that this Court order a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

**Wherefore**, the United States respectfully requests that Defendant's motion for compassionate release be denied.

Respectfully submitted,

CODY HILAND
United States Attorney

By:  Liza Brown
Bar No. 2004183
Assistant United States Attorney
P.O. Box 1229
Little Rock, Arkansas 72203
(501) 340-2600
 Liza.Brown@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system.  I also sent a copy of the foregoing by first-class mail to:


Brittany Conner
Reg. No. 76059-112
FCI Dublin
Federal Correctional Institution
5701 8th Street – Camp Parks
Dublin, CA 94568

CODY HILAND
United States Attorney

By: Liza Brown
Bar No. 2004183
Assistant United States Attorney
P.O. Box 1229
Little Rock, Arkansas 72203
(501) 340-2600
Liza.Brown@usdoj.gov